IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| ADAM FRANCIS,<br><br>        Plaintiff,<br><br>vs.<br><br>KILOLO KIJAKAZI, Acting Commissioner of Social Security,<br><br>        Defendant. | 8:22CV169<br><br>MEMORANDUM & ORDER |

This matter comes before the Court on the plaintiff's Motion for an Order Reversing the Commissioner's Decision, Filing No. 15, and Defendant's Motion for an order Affirming the Commissioner's Decision, Filing No. 20. For the reasons below, the Acting Commissioner's decision is reversed and remanded for award of benefits.

## BACKGROUND

Following his February 2019 assault and head injury in Douglas County Jail, Adam Francis filed for disability insurance benefits and supplemental security income claiming, among other symptoms, post-concussive syndrome, post-traumatic stress disorder, depression, anxiety, headaches, irregular seizures, vision problems, and hallucinations. Filing No. 9-11 at 5–6. After protracted review, during which Mr. Francis continued treatment for his developing conditions with a variety of medical professionals, and a February 2021 hearing, the Commissioner of Social Security, acting via an administrative law judge ("ALJ"), denied benefits in March 2021. While Mr. Francis's limitations prevented return to previous work, the ALJ concluded that he possessed sufficient residual function to work elsewhere in the national economy. Filing No. 9-2 at 22–31.

1

## DISCUSSION

Denial of social security benefits is reviewed for substantial evidence—less than a preponderance, but enough that a reasonable mind would find the decision supported. *Bowers v. Kijakazi*, 40 F.4th 872, 874–75 (8th Cir. 2022). Review encompasses "the record as a whole," *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009), "must take into account whatever in the record fairly detracts from its weight," *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951), and must convey sufficient reasoning to permit meaningful review, *Lucus v. Saul*, 960 F.3d 1066, 1069 (8th Cir. 2020).

While Mr. Francis raises several objections, the ALJ's "step five" determination that Mr. Francis can still work in the national economy proves dispositive. Where a claimant retains residual functional capacity, though not enough to return to a previous line of work, the commissioner must prove that suitable other work exists in the national economy. *Baugus v. Sec'y of Health & Hum. Servs.*, 717 F.2d 443, 446 (8th Cir. 1983).

To start, substantial evidence does not support the finding that Mr. Francis can still work. The ALJ concluded:

> The vocational expert testified that [Mr. Francis] would be able to perform the requirements of representative occupations such as bench assembly . . . mail clerk . . . [or] routing clerk.

Filing No. 9-2 at 30. Bounded by the ALJ's question, the vocational expert's testimony did not account for Mr. Francis's expected absenteeism, which the expert later admitted would preclude employment. *Id.* at 62–63. Both Drs. Lakshman Jayagopal, M.D., and Adam Mills, Ph.D., opined that Mr. Francis would miss work more than four days per month. Filing No. 10-9 at 17, 25. As has been long established, vocational testimony must account for *all* of a claimant's limitations. *Baugus*, 717 F.2d at 447.

It appears the ALJ failed to consider Mr. Francis's expected absenteeism because the ALJ generally discredited both opinions mentioning it:

> I find that the opinions submitted by the claimant's treatment provider Adam Mills, Ph.D., are less than persuasive because the opinions rely on the claimant's subjective allegations (Exhibits 21F and 23F). I find that the opinion of the claimant's treatment provider Lakshman Narain Arcot Jayagopal, M.D., is persuasive to the extent that the opinion supports limiting the claimant to simple work. However, I note that the remainder of the opinion is not persuasive because the objective evidence of record does not support the extreme limitations therein (Exhibit 22F).

Filing No. 9-2 at 29. To be sure, the Commissioner no longer defers to the testimony of treating physicians and instead evaluates medical opinions according to five factors, among which the first two carry the most weight: 1) supportability by objective medical evidence; 2) consistency with other opinions; 3) relationship with the claimant; 4) medical specialty; and 5) any other relevant factors. *Bowers*, 40 F.4th at 874–75. And the ALJ need not exhaustively compare and contrast details between the varying opinions.

Yet the ALJ's explanations do not support the categorical failure to consider Mr. Francis' expected absenteeism. The Court cannot tell what about Dr. Jayagopal's testimony the ALJ found inconsistent with what aspect of the objective record (and, as will be seen, the objective record well supports Dr. Jayagopal's opinion regarding absenteeism). And Dr. Mills's opinion that Mr. Francis's battery of medications imposed debilitating side effects, namely fatigue, constitutes a medical judgment *based on* both the objective record *and* Mr. Francis's reports, and so falls outside the ALJ's objection. Filing No. 10-9 at 21, 26. The ALJ, thus, should have considered Mr. Francis's expected absenteeism and failed to marshal substantial evidence for the conclusion that Mr. Francis can still work in the national economy.

3

Nor, on this record, the Court concludes, could the ALJ have done so. The objective medical record well supports the medical opinions of absenteeism. Both Drs. Jayagopal and Mills opine according to the same core train of logic: Mr. Francis's absenteeism stems from fatigue, caused by migraines, and sedation, side effect of the battery of medications prescribed in response to symptoms triggered by his head injury. Filing No. 10-9 at 13–17; 21–25.

No evidence in the record contradicts the report of Mr. Francis' head trauma. The ALJ's implied challenge:

> I note that the claimant's medical records do not reveal the details of the claimant's traumatic brain injury. The claimant alleges that he was assaulted while incarcerated in February 2019. However, the first mention of this assault appears in March 2019, almost a month later.

Filing No. 9-2 at 28. As the Court of Appeals for the Federal Circuit has explained in the analogous field of veterans' benefits, "basic evidentiary principles preclude treating the absence of a record of an unreported . . . assault as evidence of the nonoccurrence of the assault." *AZ v. Shinseki*, 731 F.3d 1303, 1318 (Fed. Cir. 2013).

The ALJ pointed to, and the Court discerns, no evidence that Mr. Francis does not suffer migraines—indeed, that's why he's been prescribed monthly Emgality injections—or the naturally resultant fatigue. Filing No. 10-4 at 30, 36. Additionally, the ALJ necessarily credited the existence of drug side effects, noting that mediation alleviates Mr. Francis's headaches, light sensitivity, and (implicitly, in noting the lack of any recently) seizures. Filing No. 9-2 at 27–28. And there's no question that Mr. Francis takes a battery of medications.

Again, the ALJ notes, and the Court discerns, no medical opinion in the record that would contradict Drs. Jayagopal and Mills's conclusion that Mr. Francis will miss four days

a month or more. Moreover, both doctors offered their opinions in February 2021. The most recent contrary decision that ALJ relies on, those of Rebecca Braymen, Ph.D., Jerry Reed, M.D., and Myron Watkins, M.D., issued *nine months earlier* in May 2020. Filing No. 9-3 at 11, 13, 46, 55.

The timeline matters. Across a record spanning *two years*, doctors tried varying approaches. Early on, in July 2019, providers at the Douglas County Department of General Assistance opted for Tylenol and ibuprofen to control Mr. Francis's recurring headaches. Filing No. 10-2 at 2. In August, Michael Amenta, APRN, started Mr. Francis on Prazosin and recommended follow-up with a neurologist, Dr. Jayagopal. *Id.* at 7. Over the next two months, amitriptyline and Seroquel were added to Mr. Francis's regimen. *Id.* at 15; Filing No. 10-4 at 50. In October 2019, as the first round of medical opinions the ALJ credited were issued, Dr. Jayagopal stopped amitriptyline, added Cymbalta, and opted to not yet start an anti-seizure medication. Filing No. 10-4 at 42. A few more months, a varied battery of medications, and one seizure later, Dr. Jayagopal started Mr. Francis on the anti-epileptic medication Lamictal, Emgality for migraines, and recommended he avoid ibuprofen in February 2020. *Id.* at 31–35.

Following the second round of medical opinions credited by the ALJ, in April and early May 2020, and following further headache complications, Dr. Jayagopal modified Mr. Francis's regimen again, this time adding Tizanidine. *Id.* at 15. In August, Mr. Francis started psychotherapy at the Nebraska Medical Center. *Id.* at 7–10. Following a further possible seizure in September, Dr. Jayagopal modified Mr. Francis's medication battery again. Filing No. 10-8 at 13. And the record continued.

5

Simply put, Mr. Francis's condition continued to develop. In crediting Drs. Braymen, Reed, and Watkins, while discrediting Drs. Jayagopal and Mills, the ALJ appeared to evaluate these medical opinions as though issued simultaneously. The ALJ, in other words, credited medical opinions which had no knowledge of how Mr. Francis's condition developed over the next eight months leading to Dr. Jayagopal's and Dr. Mills's opinions, let alone knowledge of Dr. Mills ever treating him.

Setting that all aside, however, were the Court to still disregard the opinions of Drs. Jayagopal and Mills, the *only* reasonably timely evidence of Mr. Francis's capacity to work in the national economy would be Mr. Francis's testimony at the February 2021 hearing. As he testified, Mr. Francis seems to make all of his medical appointments. He enjoys riding his bike when he can, on good days. But Mr. Francis suffers two to five migraines per week, and sometimes two or three of them quite severe. The prescriptions help, as does ibuprofen, though ibuprofen takes time to kick in; until it does, the pain prevents most function. Mr. Francis still suffers both visual and auditory hallucinations about once a week now. Medications help there too, but, of course, they leave Mr. Francis sedated. He sleeps between 14 and 18 hours per day. Filing No. 9-2 at 52–58.

On this record, substantial evidence does not exist to conclude that Mr. Francis can return to work.

> A finding that a claimant is able to engage in substantial gainful activity requires more than a simple determination that the claimant can find employment and that he can physically perform certain jobs; it also requires a determination that the claimant can *hold* whatever job he finds for a significant period of time . . . A condition that does not allow a person to work on a regular basis precludes substantial gainful activity.

*Dix v. Sullivan*, 900 F.2d 135, 138 (8th Cir. 1990). So too here. Mr. Francis may be physically capable of performing a job for some time. But absenteeism caused by migraine fatigue and medication sedation will preclude him from *keeping* it.

## CONCLUSION

In sum, the Commissioner has failed to carry her burden by substantial evidence that Mr. Francis' residual functional capacity enables him to work in the national economy, and the record precludes such a determination. Therefore, under the Social Security Act, Mr. Francis is disabled. Further proceedings would merely delay receipt of due benefits. *Pate-Fires*, 564 F.3d at 947; *Sird v. Chater*, 105 F.3d 401, 404 (8th Cir. 1997); *Dix*, 900 F.2d at 138; *Baugus*, 717 F.2d at 448.

THEREFORE, IT IS ORDERED THAT

1. Plaintiff's Motion to Reverse, Filing No. 15 is granted;

2. Defendant's Motion to Affirm, Filing No. 20 is denied; and

3. The decision of the Commissioner denying benefits, Filing No. 9-2 at 21, is reversed and remanded for an award of benefits to Mr. Francis.

Dated this 31st day of March 2023.

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge